John Vernon **DECKARD, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 54974.

Supreme Court of Missouri,
Division No. 2.

July 13, 1970.

Bob J. Keeter, Schroff & Keeter, Springfield, for appellant.

John C. Danforth, Atty. Gen., Dale L. Rollings, Michael L. Boicourt, Asst. Attys. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

On December 16, 1960, appellant was convicted of the crime of forcible rape by the verdict of a jury, and as a second offender was sentenced by the court to a term of 99 years imprisonment. That conviction was affirmed upon the original appeal. State v. Deckard, Mo., 354 S.W.2d 886. Under Bosler v. Swenson (C.A. 8th), 363 F.2d 154, inasmuch as appellant had no counsel on the original appeal and was indigent, the original conviction was set aside and the case was reinstated on the docket. Counsel was appointed, the case was briefed and submitted, and was again affirmed. State v. Deckard, Mo., 426 S.W.2d 88.

Appellant then filed a motion to vacate and set aside the judgment under Supreme Court Rule 27.26, V.A.M.R. Mr. Douglas Mahnkey was appointed to represent appellant on April 21, 1969. A hearing on the motion was had, with appellant and his counsel present, on June 6, 1969, and after findings of fact and conclusions of law, the court denied the motion.

On this appeal from the order denying the motion three points are made: "I. The trial court erred in finding that the information filed in the case was sufficient to invoke the provisions of the Habitual Criminal Act, Section 556.280, R.S.Mo. 1959 [V.A.M.S.]; II. The trial court erred in finding that appellant had effective assistance of counsel and was not denied due process of law; III. The trial court erred in finding that State's Exhibit F, a pair of blue jean trousers, was properly admitted into evidence because the admission of such evidence was prejudicial and such evidence was obtained as a result of an illegal search and seizure and violated appellant's rights under the Fourth and Fourteenth Amendments to the United States Constitution."

■ The state contends that appellant's Point I was considered on the reinstated direct appeal, and the same was "forever adjudicated against him." At 426 S.W.2d 88, 89, the court did make the general observation: "The Information filed charged the defendant under the Habitual Criminal Act, alleging prior convictions, and the proceedings were in accord with the provisions of that Act." It does not appear from the opinion or the files and records in the case that appellant's specific contention was ruled that the information is defective in that it does not allege that he was imprisoned in the penitentiary within State v. Watson, Mo., 383 S.W.2d 753. The information here alleges two prior felony offenses committed in 1956 and 1950, on the first of which he was "sentenced to Missouri State Penitentiary on June 28, 1956, received at said Missouri State Penitentiary on June 29, 1956, and discharged therefrom on June 25, 1960 by compliance with his sentence as commuted by the Governor." On the second prior offense the information alleges appellant "was convicted of the crime and offense of Robbery First Degree on November 22, 1950 in Jackson County, Missouri, sentenced to Missouri State Penitentiary on November 22, 1950, received at said Missouri State

Penitentiary on January 10, 1951, and discharged therefrom on December 5, 1955 by compliance with his sentence as commuted by the Governor." The transcript of the trial proceedings shows that documentary proof of both prior convictions was received in evidence without objection, and the trial court *found* the allegations of the information after considering this evidence outside the hearing of the jury. The jury found guilt alone, the court assessed punishment, and later sentenced him as above mentioned.

A strict construction of the Second Offender Act, § 556.280, RSMo 1959, V.A.M.S., was applied to allegations of the amended information in the Watson case, supra. It was said that allegations that the defendant was sentenced to the Federal Penitentiary at Leavenworth, Kansas, to serve a term of seven years, was thereafter received at said penitentiary on January 30, 1953, and thereafter was discharged from said penitentiary, were insufficient to invoke the provisions of the Act, because they "do not clearly and definitely comply with the provisions of the mentioned statute and do not constitute an allegation or charge that *defendant was subsequently* placed on probation, paroled, fined or *imprisoned* for the prior offense, * * *." It was however noted "that, while as a question of fact an inference might possibly be drawn from the allegations that appellant was in fact imprisoned * * *" (loc. cit. 383 S.W.2d 756 [2]), the court did not so find the allegations. Here, the case differs. The trial court did specifically find that appellant had been previously convicted of two felonies, sentenced and received at the Missouri State Penitentiary, and on both was subsequently discharged by compliance with his sentence as commuted by the Governor. That finding is supported by the proof and the clear and only inference therefrom that appellant was in fact imprisoned as a result of his convictions. Compare State v. Briggs, Mo., 435 S.W.2d 361, 363, where the information "did not stop with his sentencing but proceeded to

allege that defendant was committed to the California Youth Authority and subsequently discharged." And see State v. Rentschler, Mo., 444 S.W.2d 453, 455, where the information in the Watson case was distinguished, and it was held that an information alleging defendant had "entered" the penitentiary, followed by an allegation that he was in the custody of the State Department of Corrections, "can only be construed to mean defendant had been previously imprisoned." The Briggs and Rentschler cases indicate that the strict construction of allegations as set forth in the Watson case is being relaxed in favor of a more reasonable rule applying legitimate inferences which may arise from the language used. Thus appellant's Point I is without merit, and it is overruled, because his discharge from the penitentiary "by compliance with his sentence as commuted by the Governor" could mean only that he had in fact been previously imprisoned.

■ The trial court's findings on the allegation of ineffective assistance of counsel on the evidence is not clearly erroneous. The record shows that counsel investigated the case in preparation for trial to the best of his ability. He made every effort, along with appellant's sister and brother-in-law, to locate witnesses (named by appellant) who would testify to the defense of alibi, but was unable to do so. As to the contention that counsel failed to file a motion to suppress, or to object to the admission of evidence (bloodstained blue jeans), counsel testified that his information at trial showed the evidence was not the product of any search, illegal or otherwise. Thus there would have been no purpose served to file a motion to suppress the evidence. The testimony of the judge who presided over appellant's trial is that his counsel was competent, and for appellant "he did a splendid job, as good as any lawyer could have done under the circumstances." He would consider counsel to be in the upper ten or fifteen percent of criminal lawyers in southern Missouri. The facts developed on this hearing show what was available

to counsel at and prior to trial, not what appellant now says that to be. See State v. Wilkinson, Mo., 423 S.W.2d 693, 697 [2], "Whether the accused has been afforded adequate and effective assistance of counsel must be determined from all the facts in the case considered in the light of the situation existing at the time the attorney was required to act and not as it appears to a critical reviewer in retrospect." Appellant concedes that there is conflict in the testimony given at this hearing as to how the blue jeans came into the hands of the law officers, and that "there may have been a question of consent." There was also a conflict in the testimony as to the matter of counsel filing a motion for new trial. Appellant's version was that he asked counsel to file a motion and counsel said "he did not have any ground whatsoever to file a motion for new trial." Counsel's testimony was that the matter was discussed and "Mr. Deckard said he wanted to get it over with or words to that effect." All these matters were for the trial court to determine on conflicting evidence, and Point II is overruled.

■ Assuming, as appellant contends, that in a collateral attack on his judgment of conviction he may bring up a violation of constitutional rights in an alleged illegal search and seizure under Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227, yet the factual determination of the trial court disposes of the matter. The evidence adduced again conflicts. Irean Gideon, appellant's sister, testified that the law officers came to her home in Harrison, Arkansas. Appellant, who was helping Mr. Oliver Gideon in tree surgeon work, was staying in a house behind the Gideon's residence. The officers wanted to know if she cared if they looked in the rear house. She consented and they went in and found the pair of blue jeans and a shirt in a suitcase. Appellant was just sleeping in the rear house which was rented to the Gideons. There was no search warrant exhibited by the officers. The version of Clay Cantwell, the prosecut-

ing attorney, who went with the sheriff to the Gideon home, was that Mrs. Gideon went to the rear house, got the clothes, and gave them to him and the sheriff. "She got them and gave it to us." The Sheriff of Taney County, Theron Gideon, testified that Irean Gideon went into the rear house, got the clothing and brought it to them. Both Mr. Cantwell and Sheriff Gideon denied that they opened a suitcase. Appellant's counsel testified that the versions of Sheriff Gideon and Mr. Cantwell were the same as he had learned from Mrs. Gideon. Thus the trial court's finding that there was no search conducted is supported by the evidence. The alleged constitutional question is not reached, and Point III is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.