Charles Monroe **DONALDSON**, Appellant,

v.

**STATE** of Missouri, Respondent.

No. 56375.

Supreme Court of Missouri,
Division No. 2.

March 13, 1972.

Jon Dermott, Joplin, court appointed attorney for movant and Charles Monroe Donaldson, appellant pro se.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Charles Monroe Donaldson has appealed from the order overruling his motion, filed pursuant to Rule 27.26, V.A.M.R., to vacate a sentence of 99 years entered September 29, 1947, on a plea of guilty to a charge of rape.

Appellant was represented at his preliminary hearing and in the circuit court by Mr. Russell Mallett, a lawyer with an extensive criminal law practice and who had the reputation of being a "skillful" lawyer.

■ Appellant's first point is that his plea of guilty was involuntary because he "was promised by his attorney that if he pled guilty he would get fifteen years."

Mr. Mallet was deceased at the time of the hearing. No transcript of the proceedings was prepared at the time appellant entered his plea of guilty, and the shorthand notes of the court reporter could not be located.

Appellant testified on direct examination that his lawyer "kept telling [him] if [he] didn't plead guilty they would either give [him] the death penalty or a life sentence," but his lawyer did not tell him the statutory limits of the punishment for rape. On cross-examination he testified that Mr. Mallett led him to believe that he would receive a "smaller term," and during that examination the following occurred:

Q. Now I want you again to state exactly what this statement was that Mr.

Mallett made to you concerning your sentence, what did he tell you concerning your sentence?

A. He told me that if I would plead guilty he could probably get me 15 years.

Q. Did you ask him any questions with whom he was going to be able to do that, anything like this?

A. No.

* * * * * *

Q. You never wondered how he was going to be able to do this?

A. Certainly. I gathered he had made a deal with somebody.

Q. Did he tell you he had made a deal?

A. Not in them words.

Q. What did he say?

A. He said he had it arranged where I would get 15 years.

Mr. Ralph Baird, the prosecuting attorney at the time appellant entered his plea of guilty testified that he advised Mr. Mallett that the State would not ask for the death penalty, and that while he and Mr. Shortridge, the assistant prosecuting attorney in charge of the case, had agreed that in the event of a plea of guilty a sentence of 99 years would be recommended, he could not remember if this was conveyed to Mr. Mallett. Mr. Shortridge testified that he had no conversation with Mr. Mallett concerning a recommendation as to punishment in the event of a plea of guilty. Both Mr. Baird and Mr. Shortridge testified that appellant was told by the court that any recommendation as to punishment would not be binding upon it, and that the court told appellant that it could sentence him to life imprisonment or to imprisonment for a long term of years.

The trial court found that appellant was not misled by Mr. Mallett, and also that appellant's plea of guilty was not the result of a statement by Mr. Mallett that if appellant entered a plea of guilty he would receive a sentence of 15 years.

The burden of proving the grounds for relief was upon appellant, and upon appeal our review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Rule 27.26(j). After sentence, according to Rule 27.25, the court may set aside the judgment and permit the defendant to withdraw his plea of guilty only if such is necessary to correct manifest injustice. Russell v. State, Mo., 446 S.W.2d 782. The trial court has the right to reject testimony on behalf of a prisoner who has filed a motion pursuant to Rule 27.26, even though there is no contrary evidence offered at the hearing, Shoemake v. State, Mo., 462 S.W.2d 772, 775, particularly when the testimony favorable to the prisoner came from him, who of course has an obvious personal interest in the outcome. We consider it particularly significant in this case that if appellant had been misled by a promise by his attorney that his sentence would be 15 years, or even less than what he received, he had knowledge of being mislead from the day the sentence was pronounced. Not only did appellant not protest to the court at the time, he waited for more than 22 years, and until after the lips of his attorney were sealed by death, to make this contention. See Flood v. State (No. 56,269), Mo., 476 S.W.2d 529; and Skaggs v. State (No. 55,777), Mo., 476 S.W.2d 524.

Appellant's testimony is not convincing. He stated that his attorney told him that he would receive 15 years if he pleaded guilty, and he also stated that he was led to believe he would receive a "smaller term" than he received. More importantly, he stated on cross-examination that his attorney told him that he "thought" he could arrange for him to receive a sentence of 15 years. This indicates no more than that his counsel hoped to convince the court not to impose a severe sentence, and the record shows that at the time of the plea

of guilty his counsel presented to the court what he considered to be extenuating circumstances which would justify a lesser sentence than that imposed.

The trial court was the judge of the credibility of the witnesses, and its finding, in the circumstances of this case, that appellant was not misled by his attorney clearly is not erroneous.

■ Appellant's next point is that he was mentally incompetent at the time the plea of guilty was entered. Appellant had the burden to establish this fact, and he totally failed to do so.

The evidence on this issue is that appellant testified that at the time he was "nervous and shook up" and that appellant's attorney, the trial court, the prosecuting attorney or his assistant did not suggest to appellant that he should have a mental examination. But, both the prosecuting attorney and his assistant testified that they saw nothing which would have justified such a suggestion. Another facet of this contention is that after Mr. Shortridge testified that he had reason to believe that appellant had been released from the Navy with a bad conduct discharge because he was a sexual pervert, appellant in rebuttal testified that this was not true; that he had been released from the Navy because of drinking, being absent without leave, and for impersonating officers.

■ The trial court found that appellant was mentally competent at the time he entered his plea of guilty, and that his attorney had no reason to request a mental examination. That finding is not clearly erroneous.

Appellant's third and last point is that the "Trial court did not discharge its duties" before accepting appellant's plea of guilty.

The plea in this case was entered before the effective date of Rule 25.04, V.A.M.R., and the trial court was not charged with knowledge of what it would contain. In Patrick v. State, Mo., 460 S.W.2d 693, this court held: "However, the fact, if it was a fact, that the investigation made by the trial court prior to accepting the pleas of guilty was not as broad and inclusive as now required by Rule 25.04, V.A.M.R., or as contemplated by the then case law, does not necessarily require that the pleas of guilty now be set aside. When the contention is presented in a post-trial motion, 'The issues before the trial court * * * notwithstanding the failure of the record to show a determination prior to the acceptance of the plea * * * are whether [appellant's] plea of guilty was in fact involuntarily made or whether it was made without an understanding of the nature of the charge. If neither of those circumstances is found to have existed no manifest injustice could have resulted from acceptance of the plea.' State v. Mountjoy, Mo., 420 S.W.2d 316, 323."

There is no prescribed or precise procedure as to what must be done by the trial court to determine that an accused voluntarily and understandingly enters a plea of guilty. Inquiries into certain areas may be required in one case but would not be required in another. It is unfortunate that the notes of the reporter showing what occurred at the time the plea of guilty was entered could not be located, and it is understandable that after the lapse of more than 22 years the persons who were present would have some difficulty in recalling the precise comments of appellant's counsel and the inquiries made by the trial court.

At the hearing on the motion appellant was equivocal concerning the inquiries made of him by the trial court. He testified that he could not *recall* specifically what the court said to him: that he did not *recall* that the court (a) explained the length of sentence which it might impose, (b) inquired concerning his background, (c) asked if he understood the charge against him, and (d) asked if he was guilty. He further testified that he was not asked if he understood he had a right to trial by jury, that he had a right to con-

front the witnesses against him, or that it was not necessary for him to testify. On cross-examination he testified that he did not *recall* that the court told him it was not bound by any agreement concerning punishment, but that it was *possible* that the court so advised him. He further testified, differently from what he said on direct examination, that the court did not advise him of the possible sentences for rape or ask him whether he was guilty of the charge. In answer to questions by the court, appellant testified that he could not *recall* the court asking him if he understood that he had a right to a trial by a jury, or that the court asked him if he had anything to say before sentence was pronounced, but that he could not say that these things did not occur.

The prosecuting attorney testified that he was present at the time appellant entered his plea of guilty, that the court advised appellant he was entitled to a trial by a jury; that the court was not bound by any promises to him; that the court could impose the death penalty if appellant entered a plea of guilty; and that the court asked appellant if he had conferred with his attorney. Mr. Shortridge, the assistant prosecuting attorney testified that he was present, and that the court asked appellant and his attorney if it was correct that appellant wanted to plead guilty, and that both replied in the affirmative. He further testified that the court told appellant that any recommendation by the prosecuting attorney would not be binding on it, and that the court explained that it could sentence appellant to death, life imprisonment, or for a long term of years. He further testified that at allocution the court asked if there was any reason why sentence should not be pronounced and that after appellant's attorney said there was not, the court insisted that appellant answer, and he replied that there was not.

■ The trial court found that the plea of guilty was voluntarily entered with an understanding of the charge. Under the circumstances of this case, considering ap-

pellant's delay in challenging his conviction until after the death of his counsel, the passage of more than 22 years, the fact that the court's finding depended to a considerable part upon the credibility of the witnesses, the equivocal testimony of appellant and the unequivocal testimony given by the witnesses for the State, there was ample basis for the court's finding and order, which may not be adjudged clearly erroneous.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY, J., and FINCH, Alternate J., concur.

DONNELLY, J., not sitting.